**Charles B. JOHNSON, Plaintiff,**

v.

**FLORIDA DEPARTMENT OF CORRECTIONS, Defendant.**

**Case No. 4:10cv570–RH/WCS.**

United States District Court, N.D. Florida, Tallahassee Division.

July 20, 2011.

Charles B. Johnson, Daytona Beach, FL, pro se.

Jonathan Patrick Sanford, Florida Attorney General, Tallahassee FL, for Defendant.

### ORDER DENYING MOTION TO DISMISS

ROBERT L. HINKLE, District Judge.

This is a case about accommodation of a hearing disability within the Florida prison system. The plaintiff Charles Johnson is a hard-of-hearing inmate who alleges that he has been denied the benefit of the television and radio services provided to other inmates. He seeks an accommodation, in the form of volume-boosting listening devices, that would allow him to enjoy the television and radio as non-hard of hearing inmates do. Mr. Johnson brings claims under Title II of the Americans with Disabilities Act, section 504 of the Rehabilita-

tion Act, and the Equal Protection Clause of the Fourteenth Amendment. The defendant Florida Department of Corrections has moved to dismiss the complaint for failure to exhaust administrative remedies. This order denies the motion.

## I

■ Under 42 U.S.C. § 1997e(a), enacted as part of the Prison Litigation Reform Act, a prisoner challenging any aspect of prison conditions must exhaust all available administrative remedies before filing a lawsuit in federal court. *See, e.g., Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1217 (11th Cir.2010). Failure to exhaust is an affirmative defense, and the defendant has the burden of proving it. *See Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The purpose of the requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *see also Jones,* 549 U.S. at 219, 127 S.Ct. 910 (quoting *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir.2004), for the proposition that a primary purpose of the exhaustion requirement is "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued"). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218, 127 S.Ct. 910.

In *Parzyck,* the Eleventh Circuit summarized the procedure for filing grievances within the Florida state system:

> The grievance procedures promulgated by the Florida Department of Corrections ("FDOC") require an inmate to (1) file an informal grievance to the staff member responsible for the particular area of the problem, Fla. Admin. Code Ann. r. 33–103.005(1)(a); (2) file a formal grievance with the warden's office, *id.* at r. 33–103.006(1); and (3) submit an appeal to the Office of the Secretary of the FDOC, *id.* at r. 33–103.007(1).

627 F.3d at 1218.

■ A failure to exhaust administrative remedies is an affirmative defense that defendants bear the burden of proving. *See Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Although an affirmative defense, it is properly resolved in this circuit on a motion to dismiss. *See Bryant v. Rich,* 530 F.3d 1368, 1374–75 (11th Cir.2008). As a "matter in abatement," as opposed to an adjudication on the merits, a judge may resolve the matter by taking evidence and making factual findings even on a motion to dismiss. *See id.* at 1376.

## II

■ The facts relevant to the exhaustion issue do not appear to be in dispute. Both parties appear to agree that Mr. Johnson fully exhausted a claim of this type when he was an inmate at Polk Correctional Institution. In its motion to dismiss, the Department attached the following documents: (1) a March 2, 2010 request for accommodation, ECF No. 32–2 at 7 of 8; (2) a March 15, 2010 inmate request noting a prior grievance and a March 24, 2010 response denying the grievance while the request was processed by the "Central Office ADA Office," *id.* at 4; (3) an April 8, 2010 denial of the request, *id.* at 6; (4) an April 13, 2010 grievance to the warden on the denial, *id.* at 3; (5) an April 16, 2010 denial of the grievance at the warden's level, *id.* at 5; (6) an April 21, 2010 appeal to the

Secretary of the Department, *id.* at 2; and (7) a June 11, 2010 denial of the appeal, *id.* at 1. The Secretary's representative provided the following explanation in the denial:

> You did not identify what type of radio you were requesting nor did you provide documentation from the medical department of the depth of your hearing loss and how it would be helped by a special radio. We do not allow amplifiers or chargers in the institutions. The television in your dormitory has open captions that you can read in order to determine what is being said on the television. That is a reasonable accommodation for your hearing loss.

ECF No. 32–2 at 1 of 8.

The rub is that a couple of months before filing this case, Mr. Johnson was transferred from Polk Correctional Institution to Tomoka Correctional Institution. Although Mr. Johnson has made a separate request for better headphones while at Tomoka (after filing this case), he did not (and, on this record, still has not) fully exhausted his administrative remedies at Tomoka.

Procedurally, this may well be because Mr. Johnson attempted for some time to join another, earlier case in this district, *Garcia v. McNeil,* Case No. 4:07–cv474, making similar allegations. The *Garcia* court denied joinder of Mr. Johnson's claims on November 22, 2010, a month after the transfer to Tomoka. Although Mr. Johnson appealed that decision, he also hedged his bets by filing the current case.

The Department argues that there are significant differences between the institutions that require further exhaustion of remedies. At Polk, the televisions included a transmitter device and the receivers were available for inmates to receive the signal and play the audio. In his request for accommodation, Mr. Johnson had sought a receiving system that would produce louder sound, either through an amplifier or some other means. At Tomoka, however, the televisions do not include a transmitting device at all, so Mr. Johnson's claim necessarily includes a request for *additional* accommodation beyond that which was grieved at Polk.

## III

As a practical matter, the Department's argument makes little sense. Because no one would assert that the proper solution is to simply increase the volume of a television's speakers (which would affect every inmate in the room), any accommodation that would allow Mr. Johnson to actually *hear* the television will require (1) a device that amplifies sound to an appropriate level and (2) a means of transmitting the audio signal to that device. At Polk, the signal-transmission part was satisfied yet the Department still denied an accommodation. The Department asserted that the existing solution of on-screen captioning was itself a reasonable accommodation. While the Department correctly notes that the situation at Tomoka is different, it is apparently different in a way that would *decrease* the likelihood of an accommodation because additional technology would be required. There is simply no reason to believe the Department's position—that on-screen captioning is sufficient for individuals like Mr. Johnson—would be any different at Tomoka or any other Florida institution.

Neither party has cited a case, and I am aware of none, discussing this precise situation, where the inmate properly grieved an issue, was transferred prior to filing suit, and failed to satisfy administrative exhaustion for a functionally identical issue at the new institution. But one could easily recognize the potential for abuse in the

Department's proposed rule. Periodic transfers would allow the Department to effectively evade judicial review in perpetuity, although there is no suggestion and no evidence of bad faith on this record.

The closest analogous case is *Parzyck v. Prison Health Services, Inc.,* 627 F.3d 1215 (11th Cir.2010). In *Parzyck,* the plaintiff complained that his Eighth Amendment rights were violated by being denied consultations for severe back pain. The plaintiff first filed a grievance, received a response that his chart would be reviewed, and appealed the lack of further response to the Secretary. *See id.* at 1218. While the appeal was pending, the Department appointed a Chief Health Officer at the correctional institution, Dr. Cherry. *See id.* The plaintiff again requested an orthopedic consultation, which Dr. Cherry denied. *See id.* A couple of months later, the Secretary denied the appeal of the first grievance. *See id.* The plaintiff then filed his federal lawsuit. *See id.* While the lawsuit was pending, the plaintiff grieved Dr. Cherry's denial, which Dr. Cherry also denied. *See id.* The plaintiff appealed that decision to the Secretary, who denied the appeal. *See id.* Under these facts, the district court held that the plaintiff did not properly exhaust administrative remedies. *See id.*

The Eleventh Circuit disagreed and held that the claim was properly exhausted. The circuit rejected the district court's conclusion that the first grievance was not properly exhausted because it referenced acts that occurred before Dr. Cherry was appointed. That is so because a grievance need not name any particular defendant and is merely required "so that there is 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 1218–19 (quoting *Woodford v. Ngo,* 548 U.S. 81, 93,

126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). The court continued:

> Although Parzyck's first grievance did not name Dr. Cherry, it accomplished § 1997e(a)'s purpose by alerting prison officials to the problem and giving them the opportunity to resolve it before being sued. Parzyck was not required to initiate another round of the administrative grievance process on the exact same issue each time another request for an orthopedic consultation was denied. See *Howard v. Waide,* 534 F.3d 1227, 1244 (10th Cir.2008) ("Howard was not required to begin the grievance process anew ... [because] further grievances complaining of the same living situation would have been redundant."); *Johnson [v. Johnson,* 385 F.3d 503, 521 (5th Cir. 2004) ] ("As a practical matter, Johnson could not have been expected to file a new grievance ... each time he was assaulted.... Johnson's grievances were sufficient to exhaust claims that arose from the same continuing failure to protect him from sexual assault."). Nothing in the FDOC's grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance.

*Parzyck,* 627 F.3d at 1219.

The reasoning in the *Parzyck* case is equally applicable here, despite the factual differences. The Secretary had full notice of the issue and adequate opportunity to address the complaint administratively before Mr. Johnson filed his suit. The transfer to Tomoka is just a "subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance." Although individual institutions have some authority and discretion to resolve grievances, the ultimate responsibility for grievances like these lies

with the Secretary. That responsibility does not change regardless of when, where, and how often Mr. Johnson is transferred within the Florida Department of Corrections. Although the Department makes much of the fact that a different facility is involved, it gives no reason to believe that the transfer to Tomoka here is substantively different than if the leadership at Polk had turned over en masse and the new warden at Polk removed the pre-existing transmitters on the televisions. Surely the Department would have no exhaustion defense under those facts.

The Department's argument is also at least partially premised on a mischaracterization of the complaint. The Department argues that Mr. Johnson's scope of relief is limited to the specific technical accommodation requested. Thus, when a new facility has different technology that requires a different solution, the new problem has not been adequately grieved. But that is incorrect. Mr. Johnson is a disabled person alleging placement in a facility that provides unequal access to services without providing a reasonable accommodation. His requested relief would apply to the Department across all of its facilities—it could not evade any injunctive relief simply by transferring Mr. Johnson to yet another facility that could not implement the precise technical solution applied at the facility where Mr. Johnson won the case. *Cf.* 28 C.F.R. § 35.152(b)(2)(iii) (requiring public correctional authorities to not "place inmates or detainees with disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed").

In sum, the transfer from Polk to Tomoka did nothing to change the underlying complaint. The Department knew about the issue when Mr. Johnson fully grieved it at Polk, and it knew about the issue when Mr. Johnson attempted to join the *Garcia* litigation. Imposing a separate exhaustion requirement here would provide no better notice to the Department than it already has, and no more meaningful opportunity to address the issue. Requiring further exhaustion would be an empty formality.

## IV

For these reasons,

IT IS ORDERED:

The motion to dismiss, ECF No. 32, is DENIED.